UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| KATHY D. HOLLER, | : | Case No. 1:06-cv-764 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | Magistrate Judge Timothy S. Hogan |
| vs. | : | |
| | : | |
| HARTFORD LIFE AND ACCIDENT | : | |
| INSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | |

**DECISION AND ENTRY: (1) ADOPTING THE REPORT AND
RECOMMENDATIONS OF THE UNITED STATES MAGISTRATE JUDGE
(Doc. 31); and (2) GRANTING PLAINTIFF'S MOTION FOR JUDGMENT ON
THE PLEADINGS (Doc. 26)**

This civil action is before the Court upon the Report and Recommendations (Doc.

31) of United States Magistrate Judge Timothy S. Hogan regarding Plaintiff's motion for

judgment as a matter of law (Doc. 26) and responsive memoranda (Docs. 27, 29).

Subsequently, Defendant filed Objections to the Report and Recommendations (Doc. 34)

and Plaintiff filed a memorandum *contra* (Doc. 36).  Also before the Court is the

Administrative Record which is comprised of Hartford's Long Term Disability Benefits

Plan documents (AR 1-23) and the documents which constitute Plaintiff's claims file

(ADM 1-1441).[1]

---

[1]   This civil action has a long backround and procedural history with the Court.  This is
the third of three ERISA cases filed by Plaintiff concerning the termination of her long term
disability benefits under the Hartford Plan.  This Court takes judicial notice of the District Court
Opinions and Orders issued in *Kathy D. Holler v. Hartford Life & Accident Ins. Co.*, S.D. Ohio
Case No. 1:04-cv-37 (*Holler I*) and *Kathy D. Holler v. Hartford Life & Accident Ins. Co.*, S.D.
Ohio Case No. 1:06-cv-405 (*Holler II*).  Given that the Administrative Record in this case totals
over 1,400 pages, the Court will cite to particular portions of the record as necessary for its
analysis of the issues raised by the present motion.  Insofar as the Court seeks to summarize the
backround and history of this case, the Court incorporates by reference *Holler I* (Docs. 31, 33)
and *Holler II* (Docs. 24, 28).

## I.  BACKGROUND FACTS

Plaintiff was employed by Flour Daniel Fernald from 1992-2001.  In October

1999, Plaintiff applied for long term disability benefits under a group insurance policy

issued and administered by Defendant.  Plaintiff's claim was based on diagnoses of

fibromyalgia, thoracic outlet syndrome, and lower back pain.  She was initially approved

for an award of benefits under Hartford's Long Term Disability Benefits Plan ("the

Hartford Plan") in December 1999.  In December 2000, Defendant determined that

Plaintiff was no longer disabled under the terms of the Plan and terminated her long term

disability benefits.  That termination decision was based, in part, on surveillance video

showing Plaintiff's activities outside her home prior to going to a work evaluation,

outside a shopping mall following the evaluation appointment, and upon Plaintiff's return

home.  Termination of Plaintiff's benefits became effective on November 30, 2000.

Plaintiff appealed the administrative decision, which was upheld upon

administrative review, and subsequently filed a *pro se* ERISA action for judicial review

of Defendant's decision to terminate her benefits (*Holler I*).  In October 2005, Judge

Watson found that Defendant's decision to terminate Plaintiff's benefits was arbitrary and

capricious and entered judgment in Plaintiff's favor.  (*See Holler I*, Doc. 33).  Because

Plaintiff's claim was still within the first 36 months, the Court's decision in *Holler I* only

addressed whether Plaintiff was entitled to long term disability benefits under the terms of

the Plan as a result of being prevented from performing the essential duties of her own

occupation.  (*See Holler I*, Doc. 51 at 3-5).

-2-

Following the Court's decision in *Holler I*, Defendant calculated the award of benefits due to Plaintiff under the Plan and determined that, based on offsets for Social Security Disability payments Plaintiff received, and a lump sum payment she received from her retirement account, Defendant did not owe her any additional sums. In fact, Defendant determined that Plaintiff had been overpaid and sought reimbursement from her. This conflict spawned the litigation now referred to as *Holler II*, and resulted in a judgment from this Court that the administrative decision requiring an offset of Plaintiff's pension benefits was not arbitrary or capricious. (*Holler II*, Doc. 28).

Under the terms of the Plan, long term disability benefits were awarded to Plaintiff for an initial period of 36 months based on a finding that she was "totally disabled" under the terms of the plan "from performing the essential duties of [her own] occupation." (Doc. 21 at 7). In order to continue receiving benefits after the initial 36 month period, Plaintiff had to be "prevented from performing the essential duties of any occupation for which [she] is qualified by education, training, or experience." (Doc. 21 at 7). By letter dated June 2, 2006, Defendant informed Plaintiff that it had conducted a review of her claim and had determined that she did not meet the definition of disability beyond October 14, 2002 under the "any occupation" standard applicable to her continuing claim. (Doc. 2 at 196-202). Plaintiff appealed the decision to deny her benefits under the "any occupation" Plan provisions. The administrative decision denying benefits was upheld on appeal by letter to Plaintiff dated September 29, 2006.

Plaintiff initiated this ERISA action, pursuant to 29 U.S.C. § 1132(a), seeking judicial review of Defendant's decision to deny her benefits under the Plan's "any occupation" provision. Plaintiff points to seven factors which the Court should consider and which support a finding that Defendant abused its discretion in evaluating her claim: (1) Defendant's initial 1999 decision to award Plaintiff benefits under the Plan was based on a finding that she was totally disabled from performing a sedentary occupation; (2) this Court concluded in *Holler I* that Defendant's decision to disregard its 1999 award was arbitrary and capricious; (3) at Defendant's urging, Plaintiff applied for and was awarded Social Security benefits based on a finding that she was disabled from performing any jobs under the Social Security Act as of April 14, 1999; (4) Defendant has demonstrated contempt for Plaintiff by reporting her to the Ohio Department of Insurance, Fraud Division; (5) there is no difference between Plaintiff's limitations with respect to her own occupation, which was sedentary, and her ability to perform any occupation; (6) there is no evidence of medical improvement to warrant a finding that Plaintiff's ability to perform work-related functions has increased since she was found disabled from her own occupation in *Holler I*; and (7) Defendant's dual role as both plan funder and claims administrator gives rise to a conflict of interest which must be factored into the Court's review of Plaintiff's claim.

Defendant argues that its decision was not arbitrary and capricious, but was based on independent reviews of the medical evidence provided by Plaintiff, and a review by a

-4-

vocational counselor, which demonstrated that Plaintiff was able to perform a range of sedentary work and therefore was not disabled from "any occupation" under the terms of the Plan. Defendant maintains that the Court's decision in *Holler I* does not estop Defendant from reviewing the claim anew under the "any occupation" provisions of the contract. Defendant also claims that while it considered the fact that Plaintiff was awarded social security benefits, it was not bound by such a finding to conclude that she was disabled under the "any occupation" terms of the policy. Defendant notes that Plaintiff's "any occupation" claim was reviewed by a claims personnel in a separate and distinct location from those who reviewed her "own occupation" claim in *Holler I* and that both the initial review and the review on appeal included file reviews by medical experts. Defendant contends that any conflict of interest inherent in its dual role as claims administrator and claims payor is thus mitigated by the independent opinions upon which its reviews relied in rendering their decisions, both on the initial review and the administrative appeal.

## II.  STANDARD OF REVIEW

The Court reviews *de novo* a denial of benefits under an ERISA plan "unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *University Hosp. v. Emerson Elec. Co.,* 202 F.3d 839, 845 (6th Cir. 2000). If an administrator has such discretionary authority, the Court reviews the denial of benefits under the arbitrary and capricious standard.

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989); *University Hosp.*, 202 F.3d at 845.

The arbitrary and capricious standard applies in the present case because the Plan gives Defendant "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." (AR 18). "When a plan administrator has discretionary authority to determine benefits, [the Court] will review a decision to deny benefits under 'the highly deferential arbitrary and capricious standard of review.'" *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 595 (6th Cir. 2001) (quoting *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996)).

Nonetheless, as noted by the Sixth Circuit, merely because the review is deferential does not mean that it is inconsequential. *Moon v. UNUM Provident Corp.*, 405 F.3d 373, 379 (6th Cir. 2005). The appellate court explained that while a benefits plan may vest discretion in the plan administrator, the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber-stamping those decisions. "The arbitrary-and-capricious . . . standard does not require us merely to rubber stamp the administrator's decision." *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004) (citing *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003)). Indeed, "[d]eferential review is not no review, and deference need not be abject." *McDonald*, 347 F.3d at 172. Our task is to "review the quantity and quality of the medical evidence and the opinions on both sides of the issues." *Id.*

-6-

If the administrative record, as it existed at the time of the administrator's final decision, supports a "reasoned explanation" for the termination of benefits, the decision is not arbitrary or capricious. *Id.* (citing *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000)). *See also Wilkins v. Baptist Health Care Sys.*, 150 F.3d 609, 615 (6th Cir. 1998). Moreover, where, as here, Defendant acts as both the Plan Administrator and Plan Insurer, these dual roles create a conflict of interest which the Court must consider as a factor when evaluating whether Defendant abused its discretion by denying the benefits claim. *Glenn*, 554 U.S. at 304. Thus, when there is a conflict of interest, "the reviewing judge should take account of that circumstance as a factor in determining the ultimate adequacy of the record's support for the agency's own factual conclusion." *Id.* at 312. (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 492-97 (1951)).

## III.   ANALYSIS

Defendant makes four specific objections to the Magistrate Judge's Report and Recommendations. (Doc. 34). This Court will address each objection in turn.

### A.   The "Arbitrary and Capricious" Standard

Defendant objects to the finding that its administrative decision was arbitrary and capricious because the Report and Recommendations allegedly failed to apply the arbitrary and capricious standard properly. Defendant claims that the Report and Recommendations essentially shift the burden of proof from Plaintiff to Defendant.

Contrary to Defendant's argument, this Court need not "defer completely to the decision of the plan administrator." *Combs v. Reliance Standard Life Ins. Co.*, No. 2:08cv102, 2009 U.S. Dist. LEXIS 82602, at * 7 (S.D. Ohio 2009). Several factors must be taken into account when reviewing whether a benefits decision is arbitrary: (i) the existence of a conflict of interest; (ii) the determination made by the Social Security Administration; and (iii) the quality and quantity of medical evidence. *Id.* (citing *DeLisle v. Sun Life Assurance Co. of Canada*, 558 F.3d 440, 444 (6th Cir. 2009)).

In *Glenn*, 554 U.S. 105, the Supreme Court found that the plan administrator's decision was arbitrary in an action similar to, but not nearly as compelling as the instant case. Significantly, the reasons supporting the "arbitrary" finding were: (1) the existence of a conflict of interest; (2) the failure of the administrator to give any weight to the Social Security Administration's determination that the claimant was totally disabled; (3) the failure of the administrator to provide any explanation for rejecting the treating physician's opinion; and (4) the incomplete record provided to the administrator's medical consultant. *Id.* at 315. All of these factors are also at play in the instant case. Moreover, in *Glenn*, the insured's treating physician had also concluded that the insured was not totally disabled, but in the instant case, all of Plaintiff's treating physicians opine that she is totally disabled.

Although Defendant argues that this Court's determination in *Holler I* cannot be dispositive now, the case they rely on for that proposition, *McDaniel v Hartford*, No. 5-

-8-

07-cv-7, 2008 U.S. Dist. LEXIS 76402 (M.D. Ga. 2008), is inapposite. In *McDaniel*, a

registered nurse with a back problem was unable to perform her "own occupation"

because she could not push and pull patients into and out of hospital beds and lift and

carry 25-50 pounds multiple times per day. After the own occupation benefit period of

the Hartford policy at issue expired, Hartford argued that the nurse was not disabled from

performing "any occupation," because she could perform "sedentary work." *Id.* at 4.

Unlike *McDaniel*, this Court has already determined that it is arbitrary to conclude that

Plaintiff could perform a sedentary job. Therefore, the decision in *Holler I* is quite

significant and *McDaniel* is not persuasive.[2] *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286,

295-97 (6th Cir. 2005), is also instructive. The Sixth Circuit determined that a denial of

benefits was arbitrary because the record showed that: (1) the plan administrator did not

account for the Social Security Administration's total disability determination; (2) the

determination was made on a file review without an independent medical evaluation;

(3) a conflict of interest existed; and (4) the administrator ignored the objectively-

---

[2] Under the Policy, Plaintiff is entitled to benefits for 36 months if she is unable to perform her sedentary occupation (the subject of *Holler I*). After 36 months, Plaintiff is entitled to benefits if she cannot perform the essential duties of any occupation for which she "is qualified by education, training or experience that has an earnings potential greater than an amount equal to the product of . . . her pre-disability earnings (*i.e.*, $38,000 per year) adjusted annually [from 1999] by adding . . . the percentage change in the Consumer Price Index." (Policy at 5, 7). Even though the Policy technically contemplates two differing analyses, in Plaintiff's case, this is a distinction with no difference because Plaintiff's "own occupation" was a sedentary, clerical job. Thus, in the context of her claim analysis, there can be no material distinction between "own occupation" and "any occupation." The Court explained in *Holler I*: as the result of Ms. Holler's fibromyalgia, thoracic outlet syndrome, and low back pain, it is "arbitrary" to conclude that Ms. Holler is not "disabled" from performing a "sedentary" occupation. (Case No. 1:04-037, Docs. 31 and 33).

verifiable evidence showing disability. The record reflects that the same facts are true in the instant case.

### B.    Conflict of Interest

Next, Defendant argues that the Report and Recommendations gives improper weight to the conflict of interest. The Court must take the conflict of interest into account when considering whether Defendant's decision to deny benefits was arbitrary and capricious. The weight to be given to Defendant's conflict of interest depends on the facts of the case. *Glenn*, 554 U.S. at 315-16. The conflict can be of "great importance" if, as is the case here, there is evidence that the insurer has a history "of biased claims administration." *Id*. In this case, the conflict is entitled to greater weight because Defendant required Plaintiff to apply for social security disability benefits under the theory that she could not do any work and then ignored the SSA decision to award benefits, coupled with its unreasonable requirement of objective evidence to support Plaintiff's fibromyalgia diagnosis, and its heavy reliance on Dr. Bress's opinion. Moreover, the Court calls into question Defendant's "seemingly inconsistent positions [which] were both financially advantageous." *Id*. at 311.

Defendant has a clear history "of biased claims administration." Defendant exhibited "bias" in its arbitrary denial of Plaintiff's original claim. (*See Holler I*). It also expressed bias in its internal emails which celebrated its denial of Plaintiff's claim. (Doc. 36, Ex. 1). Defendant even referred Plaintiff to the Ohio Department of Insurance, Fraud

Division. *Id.* Accordingly, Defendant's conflict is, as a matter of law, of "great importance." Therefore, to the extent that the Report and Recommendations give significant weight to Defendant's conflict, such weight is proper under the facts. The Court finds that there is evidence of bad faith.

C.     **The Social Security Finding of Disability**

When determining if a benefits decision is arbitrary, a court should give weight to the decision of the SSA. *DeLisle*, 558 F.3d at 445. Although not dispositive, a decision by the SSA is a significant factor to be considered, particularly when, as here, Defendant: (1) required Plaintiff to apply for Social Security; (2) benefitted financially from the receipt of Social Security; and (3) did not explain why it reached a different outcome than the SSA. *Combs*, 2009 U.S. Dist. LEXIS 82602 (*citing DeLisle* at 446, *Bennett v. Kemper Nat'l Servs.*, 514 F.3d 547, 554 (6th Cir. 2008)). These factors weigh in favor of the decision being adjudged as arbitrary and capricious. *Id.*

Defendant argues that Plaintiff's award of social security benefits is not determinative of whether she is disabled under the Hartford Plan. This Court agrees that nothing in the Plan requires Defendant to forego a review of Plaintiff's eligibility for benefits under the "any occupation" provisions of the Plan based solely on the fact that she was awarded social security disability benefits for her disability. Nevertheless, like the *Glenn* Court, this Court finds it highly questionable that Defendant required Plaintiff to apply for social security benefits based on the position that she could not work, then

-11-

received the bulk of those benefits as a setoff to the plan benefits owed her under the

"own occupation" policy provisions, and then ignored the agency's finding in concluding

that she could in fact do sedentary work. 461 F.3d 660, 666-669 (6th Cir. 2006), *aff'd*

*and cited with approval*, 554 U.S. at 311. *See also Darland v. Fortis Benefits Ins. Co.*,

317 F.3d 516 (6th Cir. 2003).

### D.    Objective Evidence of Fibromyalgia and Dr. Bress's Medical Opinion

Finally, Defendant argues that: (1) it was proper to find that Plaintiff required

objective evidence that she was disabled by fibromyalgia; and (2) Dr. Bress's opinion was

rational and reasoned in light of the record.

The quality and quantity of the medical evidence reflecting fibromyalgia is

sufficiently set forth. In sum, the record does not show that Defendant offered a

"reasoned explanation" based on the required *substantial* evidence. *DeLisle*, 558 F.3d at

444. Substantial evidence means "much more than a mere scintilla. It means such

relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *McDonald*, 347 F.3d at 171.

"Fibromyalgia is a form of rheumatic disease with no known cause or cure. The

principal symptoms, which are entirely subjective, are pain and tenderness in muscles,

joints and ligaments, but the disease is frequently accompanied by fatigue, sleep

disturbances, anxiety, dizziness, irritable bowels and tension headaches." *Walker v. Am.*

*Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1067 (9th Cir. 1999) (citing

-12-

Arthritis Foundation Pamphlet, Fibromyalgia 6-8 (1989)). (*Holler I*, Doc. 31 at 10).

A fibromyalgia diagnosis can be vexing because it cannot be confirmed by medical or laboratory testing and commonly turns on subjective reports of plain. *Green v. Prudential Ins. Co.*, 383 F.Supp. 2d 980, 996 (M.D. Tenn. 2005). In fact, the Sixth Circuit has recognized the difficulty of diagnosing fibromyalgia. "Unlike most diseases that can be confirmed or diagnosed by objective medical tests, fibrositis can only be diagnosed by elimination of other medical conditions which may manifest fibrositis-like symptoms of musculoskeletal pain, stiffness, and fatigue." *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 817-819 (6th Cir. 1988). "In stark contrast to the unremitting pain of which fibrositis patients complain, physical examinations will usually yield normal results – a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease." *Id.* Nevertheless, Defendant denied Plaintiff's claim because it concluded that there was a lack of objective medical evidence to support her doctors' diagnosis of fibromyalgia.

Prior to Defendant's June 2006 denial of Plaintiff's "any occupation" claim, Plaintiff's physicians continued to diagnose her with disabling fibromyalgia, pain, fatigue, thoracic outlet, and back pain. (ADM 69, 71 ). Plaintiff's symptoms included extreme pain, fatigue, weakness, numbness, and tingling. *Id.* She had difficulty with standing or sitting for more than 20-30 minutes, lifting/carrying/pushing/pulling 20 pounds, driving

or keyboarding for more than 10-20 minutes, and reaching/working overhead. *Id.* Her doctors continued to order that she remain "out of work." *Id.*

Nonetheless, Defendant rejected the opinions of Plaintiff's treating physicians and instead adopted the report of its consultants who only reviewed records. (*See ADM 262-269*). Notably, Defendant's doctor came to his contrary opinion in spite of his recognition (*ADM 269*) that Plaintiff's treating physician had directly communicated that "Ms. Holler is (in)capable of any types of employment activities as a result of her chronic fatigue and the physical examination findings of spasm, tenderness, and pain." (*See ADM 267-269*). The very next day, in contravention of Dr. Blatman's assessment and this Court's 2005 Opinion, Defendant's doctor concluded that Plaintiff could work a full time job. *Id.*

Defendant relied heavily in its appellate decision on Dr. Bress's opinion that "[t]here is no evidence to support fibromyalgia and no limitations from fibromyalgia." (ADM 38). Dr. Bress concludes that any limitations Plaintiff has on her ability to perform work functions "are primarily due, as stated, to the pulmonary and cardiac conditions." (*Id.*) However, the record does not provide a "reasoned explanation" for these conclusions, and, therefore, these conclusions are not sufficient to support the denial decision in this case. Dr. Bress was not a independent medical expert, rather he was a non-examining file reviewer who was hired by Defendant. Dr. Bress's opinion was based on a review and summary of the record which mischaracterizes the evidence related to

-14-

Plaintiff's fibromyalgia and corresponding impairments. Consequently, the Court views Dr. Bress's opinion with some skepticism. *Moon*, 405 F.3d at 381-82.

As noted in *Glenn*, Defendant's emphasis on its own doctor's record review and its de-emphasis of the opinions of Plaintiff's treating physicians is a "serious concern" that "taken together with some degree of conflicting interests" can properly be the basis for setting aside an insurer's discretionary decision. Defendant cannot point to any medical evidence that is substantially different in kind or degree from the medical evidence and arguments presented to this Court in *Holler I*. From a medical perspective, nothing has changed from *Holler I* to this case.

The Administrative Record as a whole is replete with medical records which address Plaintiff's fibromyalgia. Indeed, that diagnosis is among the reasons why she began treating with Dr. Blatman in the first instance. (*See, e.g.*, ADM 355, 373-74, 480-81). Plaintiff's treating physicians have rendered opinions that she cannot sustain work activity for a full eight-hour day. Dr. Bress's review of the medical record, upon which Defendant relies to deny Plaintiff's benefits claim, selectively focuses on certain documents to the exclusion of others and mischaracterizes the record evidence to support his opinion. His opinion cannot be supported by a rational review of the record. Not only does he disregard the opinions of Drs. Blatman and Diller as to Plaintiff's functional limitations resulting from her fibromyalgia, he goes so far as to conclude that the records do not support such a diagnosis in the first instance, or any limitations deriving therefrom.

These conclusions are neither reasonable nor rational in light of the Administrative Record.

## IV.   CONCLUSION

As required by 29 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), the Court has reviewed the comprehensive findings of the Magistrate Judge and considered *de novo* all of the filings in this matter, including the Administrative Record.  Upon consideration of the foregoing, the Court does determine that such Report and Recommendations should be and is hereby adopted and that Defendant's objections are overruled.

Accordingly, in regard to the Report and Recommendations (Doc. 31), Plaintiff's motion for judgment on the pleadings (Doc. 26) is **GRANTED**.  Plaintiff remains totally disabled and is therefore entitled to benefits under the Plan since December 2000, plus accrued interest.  Furthermore, Defendant must continue to pay Plaintiff's benefits until June 2031, or until such time that her physician certifies that her position has materially improved.

**IT IS SO ORDERED**.

Date:   8/27/10

Timothy S. Black
United States District Judge

-16-